UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

HARRY JARED HERMES            CIVIL ACTION NO. 23-1441

VERSUS            JUDGE S. MAURICE HICKS, JR.

GREENWOOD POLICE DEPT., ET AL.            MAGISTRATE JUDGE MCCLUSKY

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Pursuant to FRCP 12(b)(6) brought by Defendants Town of Greenwood,[1] Jerry Steele ("Steele"), George Shaul ("Shaul"), and Chris Faris ("Faris") (collectively "Defendants"). See Record Document 9. Plaintiff Harry Jared Hermes ("Hermes") opposed the motion and Defendants replied. See Record Documents 13 & 14. For the reasons stated below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The facts are alleged in the Complaint as follows. On September 12, 2022, Hermes's parents contacted Shane Gibson ("Gibson"),[2] the Chief of Greenwood Police Department, to complain that Officer Faris was targeting, harassing, and intimidating Hermes. See Record Document 1 at ¶ 5. Hermes's parents alleged that as part of his pattern of harassment, Faris issued a felony warrant for Hermes based on "made up" information. See id. In response to the complaint, Gibson explained that "Faris was a good cop" but "promised to investigate" the allegations. Id.

---

[1] Town of Greenwood is incorrectly named "City of Greenwood" in the Complaint. See Record Document 1 at ¶ 4. Town of Greenwood is sued through its police department. See id.

[2] Shane Gibson was not named as a party in this case.

On October 12, 2022, Hermes was present at his parents' home in Greenwood, Louisiana when Steele, Shaul, and Faris (collectively "Officers") arrived at the family's home. See id. at ¶¶ 5-6. "The purported purpose of the visit was to serve a warrant, though on route to the Hermes' residence, Defendant Faris confirmed with the Caddo Parish Sheriff Department that [Hermes] had been previously served with the warrant and that [Hermes] had complied with the same." Id. at ¶ 6. Later, it was explained that the purpose of the visit was to investigate a neighbor's complaint that Hermes drove by their home and yelled curse words. See id. at ¶¶ 6-7.

When the Officers arrived, they searched "the outside perimeter of the home." See id. at ¶ 6. Shaul approached the front door and rang the video doorbell. See id. at ¶¶ 6-7. Through the video doorbell, Shaul informed Hermes's parents that "if he did not get Plaintiff's side of the story . . . he would have to issue an arrest warrant for Plaintiff." Id. at ¶ 7. Hermes's parents contacted Hermes, who then came to the door. See id. at ¶ 8. At the door, Hermes answered Shaul's questions and denied his neighbor's allegations. See id. at ¶¶ 8-9. When Shaul asked Hermes to step out of the house, Hermes declined and explained that he did not feel comfortable doing so given his history with Greenwood Police Department. See id. at ¶ 8. Hermes asked Shaul to leave. See id.

Steele and Faris joined Shaul at the door. See id. at ¶ 9. At that time, Hermes and his father (through the video doorbell) asked the Officers to leave the home. See id. When Hermes and his father noticed Faris was present, they specifically demanded Faris leave the home. See id. After they asked Faris to leave the home, Faris "violently grabbed Plaintiff by his wrists, drew his taser and threatened to use it on Plaintiff." See id. at ¶ 9. Faris forced Hermes out of the home and arrested him. Neither Steele nor Shaul

2

attempted to stop Faris from grabbing, threatening, or arresting Hermes. See id. Hermes was subsequently charged with Disturbing the Peace and Resisting Arrest. The charge for Disturbing the Peace was dropped. See id.

Hermes filed the instant suit against Town of Greenwood, and against Steele, Shaul, and Faris in their individual and official capacities, seeking declaratory, injunctive, and monetary relief pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. See id. at ¶¶ 1, 4. Hermes asserts federal claims of false arrest, illegal search, excessive force, equal protection, bystander liability, and Monell claims, and state law claims of invasion of privacy, denial of humane treatment, torture and cruel, excessive and unusual punishment, gross negligence, and intentional torts.

Defendants filed a Motion to Dismiss (Record Document 9) seeking dismissal of all of Hermes's claims. Defendants contend that the official capacity claims against Steele, Shaul, and Faris are duplicative of the claims against Town of Greenwood, and that the individual capacity claims are barred by qualified immunity. They further contend Hermes alleged insufficient facts to establish the Monell claims against Town of Greenwood and the bystander liability claims against Steele, Shaul, and Faris. Finally, Defendants contend that the state law claims are barred by state law immunity under Louisiana Revised Statute § 9:2798.1.

**LAW AND ANALYSIS**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine

whether a complaint is adequate under Rule 8(a)(2), courts now apply the "plausibility" standard established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding on a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, 981 F.2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as fact. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive. See id. at 678-79. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

Defendants seek to dismiss the following claims under Rule 12(b)(6): (1) claims against Steele, Shaul, and Faris in their official capacities; (2) claims for punitive damages against Steele, Shaul, and Faris in their official capacities; (3) claims against Steele, Shaul, and Faris in their individual capacities; (4) bystander liability claims against Steele and Shaul; (5) Monell claims against Greenwood PD; and (6) state law claims.

## I. Official Capacity Claims

Defendants seek dismissal of Hermes's claims against Steele, Shaul, and Faris in their official capacities because the official capacity claims are duplicative of those brought against Town of Greenwood. Hermes has agreed to voluntarily dismiss his official capacity claims and punitive damages claims against the Officers in their official capacities. See Record Document 13 at 23. Hermes's official capacity claims against the Officers and Hermes's claims for punitive damages against the Officers in their official capacities are **DISMISSED**.

## II. Individual Capacity Claims

Hermes brings claims against Shaul, Steele, and Faris in their individual capacities for false arrest, illegal search, excessive force, and equal protection. Defendants argue that all the individual capacity claims should be dismissed because the individual Officers are entitled to qualified immunity.

"When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an 'obligation . . . to carefully scrutinize [the pleadings] before subjecting public officials to the burdens of broad-reaching discovery.'" Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist., 942 F.3d 258, 263-64 (5th Cir. 2019) (quoting Jacquez v. Procunier, 801 F.2d 789, 791 (5th Cir. 1986)). To overcome a defense of qualified immunity on a motion to dismiss, a plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012). A district court should only "defer its qualified

immunity ruling if further factual development is necessary to ascertain the availability of that defense." See id.

The Court engages in a two-step analysis to determine the applicability of a qualified immunity defense. First, the Court considers whether plaintiff alleged the "violation of a clearly established constitutional right." Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997) (quoting Siegert v. Gilley, 500 U.S. 226, 231 (1991)). Second, the Court considers whether "defendant's conduct was 'objectively reasonable,' measured by reference to the law as clearly established at the time of the challenged conduct.'" Id. (quoting Meadowbriar Home for Child., Inc. v. Gunn, 81 F.3d 521, 530 (5th Cir. 1996)).

Therefore, the issue is whether Hermes alleged sufficient facts to raise a reasonable inference that a violation of a clearly established constitutional right occurred and that Defendants' conduct was objectively unreasonable in light of that clearly established law.

### A. False Arrest

The existence of probable cause is a prerequisite to any constitutional arrest, which is a "seizure" of a person under the Fourth Amendment. See Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). "Probable cause" is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. "The facts [constituting the basis for probable cause] must be known to the officer at the time of the arrest; post-

6

hoc justifications based on facts later learned cannot support an earlier arrest." Club Retro, LLC v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009).[3]

The Fifth Circuit has held that where qualified immunity is asserted as a defense to a false arrest, the plaintiff must show that it was "'clearly established that the circumstances with which' the officer 'was confronted did not constitute probable cause and exigent circumstances.'" Pierce, 117 F.3d at 871 (quoting Anderson v. Creighton, 483 U.S. 635, 635 (1987)). "[T]here must not even 'arguably' be probable cause for the search and arrest for immunity to be lost." Brown v. Lyford, 243 F.3d 185, 190 (5th Cir. 2001) (internal quotations omitted). This is because "[q]ualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. Therefore, to prevail on a Section 1983 claim of false arrest, Hermes "must show that [Faris] did not have probable cause to arrest him." See Haggerty v. Tex. S. Univ., 391 F.3d 653 (5th Cir. 2004).

At this stage of the proceeding, Hermes has sufficiently alleged facts that suggest the Officers did not have probable cause for arrest. According to the Complaint, the Officers came to Hermes's home to serve a warrant. Despite learning in transit that Hermes had already complied with that warrant, they continued to the Hermes home "to purportedly investigate a neighbor's complaint." Record Document 1 at ¶ 6. Hermes

---

[3] According to the Complaint, Faris was charged with disturbing the peace and resisting an officer, both of which are misdemeanors in Louisiana. See La. R.S. §§ 14:103, 14:108. This fact does not change the constitutional analysis because "[t]he United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer." Fields v. City of South Houston, 922 F.2d 1183, 1189 (5th Cir. 1991) (citation omitted). Whether for a felony or misdemeanor arrest, "there is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause." See id. (citation omitted).

7

denied the Officers' allegations about the neighbor's complaint. Hermes's pleading alleges that the Officers retroactively justified their visit based on allegations of a neighbor's complaint that Hermes denied. The Court cannot find at this juncture that probable cause existed for Hermes's arrest for the neighbor's complaint. Whether the arrest was lawful is intertwined with the disputed facts underlying the neighbor's alleged complaint and the Officers' visit.

Defendants further argue that the arrest was lawful because Hermes "did not comply with the lawful requests of the responding Defendant Officers," citing Louisiana Revised Statute § 14:108. See Record Document 14 at 6. However, the Louisiana statute for resisting an officer makes it a crime to resist or obstruct an officer that is "authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order." La. R.S. § 14:108(A). A question remains as to whether the Officers were authorized by law to make a lawful arrest or detention; therefore, it is unclear whether Hermes had any statutory duty to comply with the demands. The Motion to Dismiss is **DENIED** with respect to the Section 1983 claim for false arrest.

### B. Illegal Search

It is clearly established that a warrantless entry into the home violates the Fourth Amendment. The United States Supreme Court has unequivocally held that absent probable cause and exigent circumstances, the entrance to a home "may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980); see also Welsh v. Wisconsin, 466 U.S. 740, 749 (1984) ("[W]arrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances."). For the purposes of the Fourth Amendment, the "area 'immediately

surrounding and associated with the home,'" also referred to as the "curtilage," is "part of the home itself for Fourth Amendment purposes." Collins v. Virginia, 584 U.S. 586, 592 (2018) (quoting Florida v. Jardines, 569 U.S. 1, 6 (2013)). "[T]he Fourth Amendment's protection of curtilage has long been black letter law." Id. Officers have probable cause to search a residence "if 'under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Aguirre, 664 F.3d 606, 610 (5th Cir. 2011) (quoting United States v. Newman, 472 F.3d 233, 237 (5th Cir. 2006)).

Hermes alleges the Officers searched the curtilage of his home without a warrant and that Faris breached the threshold of his home to pull him out and effectuate an arrest. Under the circumstances as alleged in the Complaint and at the Rule 12(b)(6) stage, the Court cannot say that the Officers had probable cause to conduct any search. According to the Complaint, the Officers explained they visited the Hermes home to investigate a neighbor's complaint that Hermes drove by their home and yelled profanities. The Officers did not have a warrant to search, and there are no facts set forth in the Complaint suggesting that probable cause existed to search the residence. Hermes's alleged misdemeanor offense of driving and yelling at a neighbor's home would have been unlikely to produce any contraband or evidence that would have been discoverable by the Officers.

Further, to the extent that the reach into the home is implicated, as explained *supra*, factual questions remain as to whether the arrest was lawful. Hermes has alleged sufficient facts to establish that Steele, Shaul, and Faris engaged in behavior that may be

considered objectively unreasonable in light of his clearly established right. Thus, the Motion to Dismiss is **DENIED** with respect to the Section 1983 claim for illegal search.

### C. Excessive Force

An excessive force claim requires the plaintiff show that while he was being arrested, he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." Ballard v. Burton, 444 F.3d 391, 402 (5th Cir. 2006) (internal quotations omitted). "Although a showing of 'significant injury' is no longer required in the context of an excessive force claim, 'we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury.'" Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) (quoting Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999)). For example, allegations that a plaintiff was "handcuff[ed] too tightly, without more, does not amount to excessive force." Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005) (quoting Glenn, 242 F.3d at 314). The threshold for what constitutes an injury is subjective and is "defined entirely by the context in which the injury arises." Schmidt v. Gray, 399 F. App'x 925, 928 (5th Cir. 2010).

According to the Complaint, Faris pulled Hermes out of his home, threatened to tase him, "roughly handle[d]" him, and ultimately "place[d] him in tightly bound handcuffs." See Record Document 1 at ¶ 9. Hermes alleges that as a result, he faced physical injury for which he sought medical treatment, as well as emotional injury. See id. at ¶¶ 10-11. By simply claiming injury, without any specificity as to what injury he suffered, Hermes fails to properly plead his claim of excessive force. Precedent makes clear that the handcuffing alone is insufficient to sustain a claim of excessive force. See Tarver, 410

F.3d at 752. Similarly, rough handling, with no facts as to what injuries were suffered, is insufficient.

As to his emotional injuries, Hermes claims that he "suffered significant emotional injury, extreme humiliation and mental anguish." See Record Document 1 at ¶ 11. However, "[o]nly substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment." Carter v. Diamond URS Huntsville, LLC, No. 14-CV-2776, 2016 WL 8711499, at *5 (S.D. Tex. Sept. 30, 2016) (citing Flores v. City of Palacios, 381 F.3d 391, 397-98 (5th Cir. 2004)). Hermes's claim that he suffered emotional injury, without more, is insufficient to meet the pleading standard. Hermes's Section 1983 claim of excessive force is **DISMISSED**.

### D. Equal Protection

To successfully plead an equal protection violation, a plaintiff must present factually supported allegations that (1) "he was treated differently than persons similarly situated to him" and (2) "that such treatment stemmed from discriminatory intent." Anokwuru v. City of Houston, 990 F.3d 956, 965 (5th Cir. 2021) (citing Fennell v. Marion Indep. Sch. Dist., 804 F.3d 398, 412 (5th Cir. 2015)). Discriminatory intent requires a showing that "the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Id. (citing Fennell, 804 F.3d at 412).

Hermes's Complaint lacks any factual support for his equal protection claim. His sole allegation related to this claim is an overly broad statement that Defendants "deliberately sought to deprive Plaintiff of equal protection of the laws." See Record Document 1 at ¶ 13. While the standard for overcoming a Rule 12(b)(6) motion does not

require minute detail, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is not enough. See Twombly, 550 U.S. at 555. Hermes's Section 1983 claim for violation of equal protection is **DISMISSED**.

### III. Bystander Liability

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995) (citing Harris v. Chanclor, 537 F.2d 203, 205-06 (5th Cir. 1976)). To assert a claim of bystander liability, a plaintiff must show that the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013) (citation omitted); see also Hale, 45 F.3d at 919 (considering whether the other law enforcement officers present "had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it"). Claims of bystander liability are not limited to acquiescence to excessive force; they may also relate to other constitutional violations. See Hanna, 726 F.3d at 646 n.11.

Hermes only asserts facts relevant to Steele and Shaul's failure to intervene in Faris's alleged excessive force used in effectuating the arrest. See Record Document 1 at ¶ 9. However, as explained *supra*, Hermes cannot establish that Faris was violating his constitutional rights through excessive force. Therefore, neither Steele nor Shaul can be liable for failing to intervene and the claims for bystander liability are **DISMISSED**.

IV.     **Monell Claims**

In the context of Section 1983 Monell claims against municipalities, courts have held that relevant policy or widespread practice need not be pled in exhaustive detail. See Maze v. Garber, No. 19-CV-0953, 2020 WL 2892174, at *3 (W.D. La. June 1, 2020) (citing Thomas v. City of Galveston., 800 F. Supp. 2d 826, 842-46 (S.D. Tex. 2011) ("[O]nly minimal factual allegations should be required at the motion to dismiss stage.")). A plaintiff alleging Section 1983 Monell claims against municipalities must plead sufficient facts "to state a claim for relief that is plausible on its face," that is, enough "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. Id. (citing Twombly, 550 U.S. at 570). A plaintiff must at least identify the relevant policy, custom or practice that was the motivating force for the alleged constitutional violation and must plead more than generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice, failure to adequately train or supervise, and negligent hiring of officials. See Maze, 2020 WL 2892174, at *3.

A municipal entity is not liable under Section 1983 on the theory of vicarious liability. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Under Monell, a municipal entity may be liable only if its official policy or custom is the "moving force" behind the plaintiff's alleged constitutional right violation. See Rivera v. Hous. Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003) (citations omitted). To succeed on a Monell claim against a local government entity, a plaintiff must establish three elements: (1) an official policy or custom; (2) of which a policy maker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom. See Valle v. City of Houston, 613 F.3d 536, 541-42 (5th Cir. 2010).

Official policy is generally found in "duly promulgated policy statements, ordinances or regulations." Id. A policy can also be evidenced by custom. A custom is a "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Hinojosa v. Butler, 547 F.3d 285, 296 (5th Cir. 2008).

A municipality can be liable for failure to train, supervise, or discipline its employees "when the municipality's failure shows a deliberate indifference to the rights of its inhabitants." Sanders-Burns v. City of Plano, 594 F.3d 366, 381 (5th Cir. 2010). "Claims of inadequate training generally require that the plaintiff demonstrate a pattern." Id. Moreover, the previous acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." Id. Monell plaintiffs must also establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights). Piotrowski v. City of Houston, 237 F.3d 567, 580 (5th Cir. 2001).

While Hermes need not plead his Monell claims in exhaustive detail, here he provides no more than generic, boilerplate recitations of the elements of claims against the Town of Greenwood. Defendants correctly argues that the allegations are conclusory. Hermes broadly states that the Town of Greenwood has carried out policies that gave rise to his injuries, including policies of continuing warrantless arrests, disregarding probable cause requirements, use of force, disregarding serious medical needs, failure to "terminate" abusive practices, failure to discipline, failure to train, failure to promulgate training policies, and facilitating constitutional violations. See Record Document 1 at ¶¶

14

16-17. However, Hermes has not done more than list the elements of a <u>Monell</u> violation outside of his conclusory allegation that the policies "caused injury to the Plaintiff." <u>See</u> <u>id.</u> at ¶ 15.

Hermes argues his claim as to failure to discipline should survive the Motion to Dismiss because he alleges his parents put Town of Greenwood on notice of Faris's harassment. However, the Complaint does not plead any facts as to the harassment nor does it allege that the Greenwood Police Department failed to discipline Faris. In fact, the Complaint alleges that Gibson took Hermes's parents' complaints and "promised to investigate the matter." <u>Id.</u> at ¶ 5.

Based on the foregoing, Hermes's <u>Monell</u> claims against Town of Greenwood are **DISMISSED**.

### V. State Law Claims

Hermes also adds state law claims for invasion of privacy, denial of humane treatment, torture and cruel, excessive and unusual punishment, gross negligence, and intentional torts under Louisiana Civil Code Article 2315 and Louisiana Constitution Article 1, §§ 2 and 5. Defendants contend that the state law claims must be dismissed because Hermes cannot overcome the immunity to which Defendants are entitled under Louisiana Revised Statute § 9:2798.1.

Under Louisiana Revised Statute § 9:2798.1, public entities and their officers and employees are immune for any actions or omissions undertaken in the performance of "policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." To overcome this immunity, a plaintiff must show that either: (1) the "acts or omissions . . . are not reasonably related to the legitimate

15

governmental objective for which the policymaking or discretionary power exists" or (2) the "acts or omissions . . . constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. R.S. § 9:2798.1(C). Alternatively, a plaintiff can overcome immunity by establishing gross negligence. See Mercer v. Lowe, 217 So. 3d 1235, 1238 (La. App. 2 Cir. 2017).

Defendants address Hermes's state law claims only by asserting state law immunity and asserting that Hermes did not point to any particular law or authority Defendants violated that would overcome this immunity. However, to overcome immunity, Hermes need not show that the actions were unlawful. He can also overcome immunity by showing that the Defendants' acts and/or omissions were malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. Hermes has sufficiently alleged conduct that could fall into that category and—as with the claims as to individual liability under federal law—more facts are necessary to determine whether state law immunity will protect Defendants from liability. The Motion to Dismiss is **DENIED** with respect to the state law claims.

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) (Record Document 9) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Pursuant to FRCP 12(b)(6) is **GRANTED** with respect to Hermes's claims against the Officers in their official capacities, excessive force and equal protection claims against the Officers in their

individual capacities, bystander intervention claims, and <u>Monell</u> claims. These claims are **DISMISSED**.

    **IT IS FURTHER ORDERED** that the Motion to Dismiss Pursuant to FRCP 12(b)(6) is **DENIED** with respect to Hermes's claims for false arrest and illegal search against the Officers in their individual capacities, and state law claims.

    An order consistent with this ruling shall issue herewith.

    **THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 27th day of December, 2024.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT